**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WYANDOTTE NATION,                       :
                                        :
          Plaintiff,    :    Civil Action No.:    04-1727 (RMU)
                                        :
          v.           :    Document No.:        7
                                        :
NATIONAL INDIAN GAMING                  :
COMMISSION *et al.*,                    :
                                        :
          Defendants.   :

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANTS' MOTION TO TRANSFER**

## I.  INTRODUCTION

This case comes before the court on the defendants' motion to transfer.  Plaintiff Wyandotte Nation (hereinafter "the Tribe") challenges the determination of the National Indian Gaming Commission ("NIGC") that the Tribe may not lawfully conduct gaming on a parcel of land in Kansas held in trust for the benefit of the plaintiff.  Because the plaintiff originally could have brought its case in the proposed transferee forum and the considerations of convenience and the interest of justice weigh in favor of transfer, the court grants the defendants' motion.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff, a federally recognized Indian tribe, seeks to open a casino on property known as the Shriner Tract, located in downtown Kansas City, Kansas.  Compl. ¶¶ 25, 37.  While

-1-

the plaintiff's main reservation is located in the state of Oklahoma, the Shriner Tract is adjacent

to a cemetery that has been held in trust by the United States for the benefit of the plaintiff since

1855. *Id.* ¶¶ 1, 17. In 1996, the plaintiff requested that the Secretary of the Interior take the

adjoining Shriner Tract into trust for the Tribe.[1] *Id.* at ¶ 23. That same year, the Department of

the Interior determined that because the Shriner Tract had been purchased with Pub. L. 98-602

("Public Law 602") funds, it was appropriate for the land to be placed into trust by the United

States.[2] *Id.* ¶ 24.

Under the Indian Gaming Regulatory Act ("IGRA"), gaming is generally barred on

property taken into trust after 1988. *See* 25 U.S.C. § 2719(a). However, this prohibition does

not apply to lands that are "taken in trust as part of: (i) a settlement of a land claim, (ii) the initial

reservation . . . , or (iii) the restoration of lands for an Indian tribe that is restored to Federal

recognition." *Id.* at § 2719(b)(1)(B). Thus, if the Shriner Tract falls within one of the three

aforementioned exceptions to the IGRA, the Tribe would be permitted to engage in some limited

"Class II" gaming or casino-type "Class III" gaming on that land. *Id.* at §§ 2703(7), (8); *see id.* at

§ 2710.

In June 2002, the Tribe submitted an amended gaming ordinance, claiming that the

Shriner Tract fell within the three exceptions to the IGRA's general prohibition on gaming on

lands acquired after 1988. Compl. ¶ 26; Defs.' Mot. at 6. Although the Tribe withdrew its

---

[1] The Tribe intended to purchase the Shriner Tract with funds obtained through an appropriation in satisfaction of an Indian Claims Commission decision. By law, property purchased with such funds must be taken into trust by the Secretary. Pub. L. No. 98-602, 98 Stat. 3149, 3151 (1984).

[2] The question of whether the funds used to purchase the land were in fact all Public Law 602 funds, and consequently a mandatory trust acquisition, is currently pending before the Kansas District Court. *Governor v. Norton*, Case No. 03-4140-SAC.

petition in August 2002 to give the NIGC more time to consider whether gaming was lawful on

the Shriner Tract, the Tribe resubmitted the petition in September 2003 after the Tribe opened a

casino on the tract and began gambling operations on it.

On March 24, 2004, the NIGC's Office of General Counsel ("OGC") issued a

preliminary advisory Indian lands opinion stating that gaming is not legal on the Shriner Tract,

and gave the Tribe time to respond.  Defs.' Mot. at 7.  The Tribe immediately brought suit

against the NIGC in the U.S. District Court for the District of Columbia, challenging the March

24, 2004, preliminary advisory opinion and requesting a temporary restraining order enjoining

the government from taking enforcement actions relating to the Tribe's gaming activities.

*Wyandotte Nation v. NIGC*, Case No. CV-04-0513 (D.D.C. March 26, 2004).  Subsequently, the

State of Kansas raided the Tribe's casino on the Shriner tract pursuant to a warrant issued by a

local state court that cited the preliminary advisory opinion.  On April 2, 2004, the D.C. District

Court transferred the case to the District of Kansas.  The NIGC then moved to dismiss the action

for lack of a final agency action; the court granted that motion on June 1, 2004.  *Wyandotte*

*Nation v. NIGC*, Case No. 04-2140-JAR (D. Kan. June 1, 2004) (Order Granting Motion to

Dismiss).[3]

Upon request for reconsideration, the OGC issued an advisory Indian lands opinion on

July 19, 2004.  The final opinion essentially confirmed the March 24, 2004 preliminary advisory

opinion that the Tribe could not lawfully game on the Shriner Tract.  On September 10, 2004, at

---

[3] The suit is still a live action, however, as to the legality of the raid on the casino by the State of
Kansas.  *See Wyandotte Nation v. Sebelius*, Case No. 04-2140-JAR.  On October 6, 2004, the court
granted the Tribe's motion for a preliminary injunction, but enjoined the Tribe from conducting any
gaming activities on the tract.  337 F. Supp. 2d 1253 (D. Kan. 2004).

the request of the Tribe, the NIGC issued a final decision on the record disapproving the Tribe's amended gaming ordinance, finding that the Shriner Tract did not qualify for any of the three claimed IGRA exceptions.

## B. Procedural History

On October 8, 2004, the plaintiff filed suit in this court, seeking review of the NIGC's September 10, 2004 decision pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et. seq*. On December 1, 2004, the defendants filed a motion to transfer this action to the District of Kansas. The court now turns to that motion.

## III. ANALYSIS

### A. Legal Standard for Venue and Transfer to Another District

When federal jurisdiction is premised on a federal question, 28 U.S.C. § 1391(b) controls venue, establishing three places where venue is proper:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Section 1404(a) authorizes a court to transfer a civil action to any other district when it could have been brought "for the convenience of parties and witnesses, in the interest of justice [.]" 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988) (quoting *Van Dusen v.*

*Barrack*, 376 U.S. 612, 622 (1964)).  Under this statute, the moving party bears the burden of

establishing that transfer is proper.  *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16

(D.D.C. 1996).

Accordingly, the defendant must make two showings to justify transfer.  First, the

defendant must establish that the plaintiff originally could have brought the action in the

proposed transferee district.  *Van Dusen*, 376 U.S. at 622.  Second, the defendant must

demonstrate that considerations of convenience and the interest of justice weigh in favor of

transfer to that district.  *Trout Unlimited*, 944 F. Supp. at 16.  As to the second showing, the

statute calls on the court to weigh a number of case-specific private and public interest factors.

*Stewart Org.*, 487 U.S. at 29.  The private-interest considerations include: (1) the plaintiff's

choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the

defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the

parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may

actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited*, 944 F. Supp. at 16 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d

Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill.

1989); 15 FED. PRAC. & PROC. § 3848 at 385 (2d ed. 1986)).  The public interest considerations

include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the

calendars of the potential transferee and transferor courts; and (3) the local interest in deciding

local controversies at home.  *Id*.

## B.  The Court Grants the Defendants' Motion to Transfer

The defendants argue that considerations of convenience and the interest of justice favor

transfer to the District of Kansas because the plaintiff has substantial ties to Kansas, the property that is the subject of the complaint is located in Kansas, and the ramifications of declaring the land to fall within a gaming exception are entirely local in nature. Defs.' Mot. at 3. In addition, the defendants point to the two cases relating to the subject matter of this litigation that are currently pending before the Kansas District Court,[4] and argue that transfer is appropriate to avoid unnecessary expenditure of judicial resources and the possibility of inconsistent results. *Id.*

In response, the plaintiff argues that none of the cases that are currently pending before the Kansas District Court involve the same parties or the same legal question. Pl.'s Opp'n at 2. The plaintiff also contends that there is a substantial connection between this action and the District of Columbia because, among other things, the NIGC's general counsel and staff attorneys are located in Washington, D.C. and the administrative process leading up to the September 10, 2004 agency decision was conducted in this District. *Id.* at 5-6. Finally, the plaintiff argues that the defendants cannot establish that Kansas has a "substantial local interest" in the outcome of this case. *Id.* at 10.

### 1. The Plaintiff Could Have Brought Suit in the District of Kansas

As noted, section 1404(a) authorizes the court to transfer the action to any district in which the plaintiff could have brought the suit if convenience and the interest of justice weigh in favor of transfer. 28 U.S.C. § 1404(a); *see also Mgmt. Info. Techs., Inc., v. Alyeska Pipeline Serv. Co.*, 1993 WL 219257, at *2 (D.D.C. June 8, 1993) (recognizing that venue may be proper in more than one district). Further, venue is proper in the "judicial district in which . . . a

---

[4] *Governor v. Norton*, Case No. 03-4140-SAC; *Wyandotte Nation v. Sebelius*, Case No. 04-2140-JAR.

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(2). Here, the parties do not dispute that venue is proper in the District of Kansas. Because the property that is the subject of the complaint is located entirely within the State of Kansas, the court determines that venue is proper in the District of Kansas. Compl. ¶ 28; 28 U.S.C. § 1391(e)(2).

### 2. The Balance of Private and Public Interests Weighs in Favor of Transfer

Because the court has concluded that the plaintiff originally could have brought suit in Kansas, the court must now address whether the defendants have shown that the balance of private and public-interest factors weighs in favor of transfer to that forum. *Van Dusen*, 376 U.S. at 613; *Trout Unlimited*, 944 F. Supp. at 16. The court determines that the defendants have met their burden.

### a. Private-Interest Factors

In weighing the private-interest factors, the court takes into consideration: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16. In aggregate, these factors weigh in favor of transfer to the District of Kansas.

With regard to the first private interest factor, courts generally must afford substantial deference to the plaintiff's choice of forum. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). But this deference is weakened when the plaintiff is not a resident of the chosen forum. *Piper Aircraft Co. v. Reno*, 454 U.S. 235, 255-56 (1981). This deference is further weakened if a plaintiff's choice of forum has "no meaningful ties to the

controversy and no particular interest in the parties or subject matter." *Airport Working Group of Orange County, Inc. v. Dep't of Defense*, 226 F. Supp. 2d 227, 231 (D.D.C. 2002) (noting that when the connection between the controversy, the plaintiff, and the chosen forum is attenuated, the court gives less deference to the plaintiff's choice of forum); *Wilderness Soc'y v. Babbit*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000).

The court determines that the plaintiff's choice of forum merits little deference for the purposes of the transfer analysis because the plaintiff neither resides in, nor has a connection to, this forum. *See id.* The land at issue in this suit is located in Kansas and the plaintiff is a federally-recognized Indian tribe whose seat of tribal government and majority of tribal members are located in nearby Oklahoma. Compl. ¶¶ 1, 28. In short, the plaintiff's choice of forum does not have meaningful ties to the controversy. *Wilderness Soc'y*, 104 F. Supp. 2d at 13.

The plaintiff, however, argues that its claim does have meaningful ties to the District of Columbia because "the federal officials whom issued the Decision are located solely in Washington, D.C.; . . . the entire administrative process . . . was conducted in Washington, D.C.; . . . the Tribe submitted all correspondence regarding this issue to the NIGC's headquarters located in Washington, D.C.; and the Tribe and its representatives traveled to Washington, D.C. to meet with the NIGC regarding the Decision." Pl.'s Opp'n at 6. This argument is unpersuasive. Under § 1404(a), the court generally accords little weight to the location of federal agencies and counsel. *See, e.g.*, *Shawnee Tribe v. United States*, 298 F. Supp. 2d. 21, 25-26 (D.D.C. 2002) (recognizing that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C., is not determinative" for venue purposes); *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 (D.D.C. 1991) (noting that the location of

counsel carries little weight).

This case is unlike *Wilderness Society*, where the Secretary of Interior's significant involvement in the decision-making process, including a six-day visit to Alaska where the property in question was located, was deemed "far from routine . . . highlight[ing] the significance of [the]issue to the entire nation" and weighed against transfer from the District of Columbia to Alaska.  104 F. Supp. 2d at 14-15.  Here, the plaintiff's claim does not involve unusual or substantial personalized involvement by any agency official, nor any issue of nationwide interest.  Rather, this case appears to concern a run-of-the-mill agency decision that has predominantly local implications.  *See, e.g.*, *Airport Working Group*, 226 F. Supp. 2d at 230 (declining to follow *Wilderness Society* because the agency's role in the case was "limited and administrative"); *Southern Utah Wilderness Alliance v. Norton*, 2002 U.S. Dist. LEXIS 27414, *11 (D.D.C. June 28, 2002) (distinguishing *Wilderness Society* because there was no "substantial personalized involvement" by an agency official, nor any public hearings in D.C., nor issues of nationwide interest to support a finding of "meaningful ties" to this District).  Because there is no identifiable connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum, the court concludes that the plaintiff's claim does not have meaningful ties to the District of Columbia.  *DeLoach v. Phillip Morris Co., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000).

With regard to where the claim arose, the cause of action arises out of Kansas.  As described above, the present controversy has evolved from an ongoing dispute tied exclusively to the state of Kansas, regarding a parcel of property located squarely within that community.  Contrary to the plaintiff's assertions, just because the NIGC's decision was issued in the District

of Columbia does not mean that this is where the plaintiff's claim "arose" for purposes of the

third factor. *Shawnee Tribe*, 298 F. Supp. 2d at 25 (concluding that the claim arose elsewhere

even though some decisions were made in Washington, D.C.). As described above, the

plaintiff's claim has substantial ties to Kansas. The court concludes that, regardless of where the

NIGC's decision was issued, this claim arises out of the state of Kansas.

As to the defendant's choice of forum and the convenience of the parties, the court

concludes that transfer of this matter to the District of Kansas is most convenient for all parties

concerned. Because the United States Attorney's Office for the District of Kansas has aided

Department of Justice attorneys in other cases involving the Wyandotte Tribe and the Shriner

Tract, and plans to assist in defending this matter, it makes sense to litigate this matter in the

District of Kansas. Defs.' Mot. at 12; Reply at 10. Moreover, because Kansas is in close

proximity to the Tribe's domicile in Oklahoma, it would be more convenient and less expensive

for the plaintiff to travel to Kansas than to Washington, D.C.[5] Finally, although there is some

contention between the parties as to where the counsel of record are located, the court reiterates

that "[t]he location of counsel carries little, if any, weight in an analysis under § 1404(a)."

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000) (internal quotation omitted).

The fifth factor, convenience to the witnesses, is of little or no relevance since this is a

review of an administrative decision that will be limited to the record. *See Valley Cmty. Pres.*

---

[5] In addition, the court is not moved by the plaintiff's assertion that transferring venue to Kansas would be inconvenient because "the Tribe's attorneys are barred in this Court, but not in federal courts located in the State of Kansas." Pl.'s Opp'n at 8. Given the number of other cases that the plaintiff's attorneys have litigated, and continue to litigate, in the Kansas District Court regarding the Shriner Tract, this does not appear to have presented the plaintiff with difficulties in the past. *See, e.g.*, *Wyandotte Nation v. Sebelius*, Case No. 04-2140-JAR, 337 F. Supp. 2d 1253 (D. Kan. 2004).

*Comm'n v. Mineta*, 231 F. Supp. 2d 23, 45 (D.D.C. 2002).  Similarly, the sixth factor, ease of access to sources of proof, also is not of great importance in this case, as the record does not seem to be of the magnitude that would require the court to consider access to it in determining venue.  Although the plaintiff argues that this factor "overwhelmingly weighs against transfer" because the administrative record is located in Washington, D.C., and "must be voluminous," Pl.'s Opp'n at 9, there is no indication that the record in this case is so sizeable as to truly be a consideration.  *Cf. Airport Working Group*, 226 F. Supp. 2d at 231 (finding that the location of the administrative record, estimated to be over 100,000 pages, was significant).

In sum, the balance of the private-interest factors weighs heavily in favor of transferring this action to Kansas.

### b.  Public-Interest Factors

The court determines that the public interest factors also weigh heavily in favor of transfer.  The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home.  *Trout Unlimited*, 944 F. Supp. at 16.

The first factor is of little significance here because the plaintiff brings suit under the APA and "[a] transferee federal court is competent to decide federal issues correctly."  *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987).  Second, the relative congestion of the transferor and transferee courts does not enter the court's analysis because the court has no reason to believe that the transferee court is more or less congested than this court, nor have the parties addressed this issue.  Because neither of the first two

public-interest factors affects the court's determination, the court determines the weight of the public-sector considerations by analyzing the local interest in deciding local controversies at home.

Here, the court finds the local interest in deciding a sizeable local controversy at home to be the most persuasive factor favoring transfer of this litigation to Kansas. Both the location of the property itself, and the ramifications of declaring the land as falling under one of IGRA's gaming exceptions, are entirely local in nature. Because this dispute will have the greatest impact on the citizens of Kansas, there is a compelling interest in allowing the local government and citizens to attend any court proceedings in person. *Citizen Advocates For Responsible Expansion, Inc., v. Dole*, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (recognizing that the interests of justice are promoted when a localized controversy is resolved locally where concerned citizens may closely follow the proceedings). Since it is the District of Kansas, not Washington, D.C., that will be directly impacted by the resolution of the dispute over the use of the Shriner Tract, the court concludes that the interests of justice will be better served if the resolution of this case occurs in Kansas.

In addition, this action should be transferred to avoid unnecessary expenditure of judicial resources and the possibility of inconsistent results. *See Cont'l Grain Co. v. Barge, FBL-585*, 364 U.S. 19, 26 (1960); *see also Martin Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) (recognizing that the interests of justice are better served when a case is transferred to the district where related actions are pending). As explained above, two cases arising out of the same set of transactional facts are currently pending before the United States District Court for the District of Kansas. The Kansas court's determination regarding the funds at issue in *Governor v. Norton*,

Case No. 03-4140-SAC, will have a direct effect on the use of the property underlying the present case, since the NIGC decision at issue in this suit assumes that the Shriner Tract was purchased with Public 602 funds. Therefore, this action must be transferred to the District of Kansas to avoid inconsistent judgments or duplicative litigation.

In sum, because this case enjoys a substantial connection to the District of Kansas, where related actions are pending and where the interests of local citizens will be directly impacted by the outcome of this dispute, the court concludes it is in the interest of justice to transfer this matter to the District of Kansas.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to transfer. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of May, 2005.

RICARDO M. URBINA
United States District Judge